UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

TAREK EDELBI and ACTUAL BUSINESS                           Civil Action No.:
SOLUTIONS INC.

                                 Plaintiffs,

                                                           **COMPLAINT**

                    -against-

ALLIED CAPITAL SERVICES, LLC, MARK                         **JURY TRIAL DEMAND**
EDWARD RUBINSTEIN, JOHN OTTOMANO and
LEONARD CAGNO,

                                 Defendants.
-----------------------------------------------------------------------------X

Plaintiffs, Tarek Edelbi ("Edelbi") and Actual Business Solutions, Inc. ("ABS") (collectively "Plaintiffs"), by their attorneys, Law Offices of Yale Pollack, P.C., upon their knowledge and belief, hereby submit this Complaint against Defendants, Allied Capital Services, LLC ("ACS"), Mark Edward Rubinstein ("Rubinstein"), John Ottomano ("Ottomano") and Leonard Cagno ("Cagno") (collectively "Defendants"), respectfully alleging as follows:

## NATURE OF THE ACTION

1.    This is a case of Defendants' abusing their power and corporate formalities to perpetuate a fraud upon their employees, including Edelbi, by promising him millions of dollars if he joined Defendants' firm.  When such millions were realized, they were retained by Defendants without properly compensating their employees, such as Edelbi, for the work they performed, depriving them of their wages and commissions due while Defendants were able to live a life of luxury, which lifestyle they still maintain to this day.

2.    Additionally, this action is to redress Defendants discrimination, harassment and retaliation of Edelbi based on his complaining of improper treatment in the workplace – namely,

race and national origin discrimination – which, when raised, ultimately led to the termination of Edelbi's employment relationship with Defendants.

3.      Finally, ABS seeks damages for its breach of contract and related claims against Defendants based on their failure to pay ABS the commissions it earned under its contract.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiffs' claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq* (the "FLSA"), pursuant to 42 U.S.C. §2000e, 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

5.      Jurisdiction of this Court over Plaintiff's New York State Human Rights Law ("NYSHRL"), New York Labor Law ("NYLL"), and common law claims is invoked pursuant to 28 U.S.C. §1367(a) as the claims are so related to Plaintiff's Title VII and FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c) because the parties reside in this District and Edelbi was employed by Defendants in this District; Defendants resides in this District; and all or a substantial part of the events or omissions giving rise to the claims at hand occurred within this District.

7.      On or about October 11, 1023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging race discrimination, national origin discrimination and retaliation.

8.      On May 22, 2024 the EEOC issued Plaintiff a Notice of Right to Sue letter.

## THE PARTIES

9.      Edelbi is an adult individual residing in the State of New York.

10.     ABS is a domestic corporation authorized to do business under the laws of the State of New York.

11.     Edelbi is the sole owner and shareholder of ABS.

12.     Upon information and belief, ACS is a domestic limited liability company authorized to do business in the State of New York.

13.     Upon information and belief, Rubinstein is an individual who resides in the County of Nassau, State of New York.

14.     Upon information and belief, Ottomano is an individual who resides in the County of Nassau, State of New York.

15.     Upon information and belief, Cagno is an individual who resides in the County of Nassau, State of New York.

16.     At all relevant times set forth herein, Rubinstein, Ottomano and Cagno (the "Individual Defendants") are and/or were members of ACS.

17.     At all relevant times mentioned herein, the Individual Defendants had the power to hire, fire, and control the wages and working conditions of Edelbi.

18.     The Individual Defendants had authority to, and did in fact, exercise operational control over ACS.

19.     The Individual Defendants set the manner by which Edelbi was to be paid (or not paid) while employed by ACS.

20.     The Individual Defendants also participated and/or condoned the race and national origin discrimination, harassment and retaliation of Edelbi, as more fully set forth herein.

21.     At all times relevant, Defendants were covered by the FLSA, Title VII, the NYLL and the NYSHRL.

22.    Defendants maintained a common policy and practice of, *inter alia*, not paying employees, such as Edelbi, for all hours worked during their employment or otherwise notifying them of their rights under the law.

23.    At all relevant times, Defendants affected commerce within the meaning of 29 U.S.C. §203(b) by producing goods for interstate commerce, or handling, selling, or working on goods or materials that have been moved in or produced for interstate commerce.

24.    Upon information and belief, the gross annual volume of sales made or business done by Defendants was not less than $500,000.

25.    At all relevant times, Defendants were Edelbi's employers within the meaning of the FLSA and the NYLL.

## FACTS

### Background of Edelbi's Employment with Defendants

26.    Edelbi is a Middle Eastern/North African adult male individual of Arabian (Syrian and Egyptian) decent.

27.    Edelbi commenced his employment with Defendants in January 2023 as an "Intake Manager."

28.    In his role, Edelbi was responsible for, among other things, making and receiving calls from business owners in order to sign them up for Employee Retention Credits ("ERCs") in exchange for a success fee for Defendants were to receive in the event the ERCs were received by the employers.

29.    In exchange for his services, Defendants agreed to pay Plaintiff a weekly salary.

30.    During his employment, in addition to failing to being paid properly, Edelbi was subjected to a hostile work environment by my supervisors, the Individual Defendants.

4

31.    From outset of his employment, Rubinstein and Ottomano repeatedly made clear how they view Whites to be the supreme race in America and how much they hate people of color.

32.    In a June 24, 2023 email with Rubinstein, Edelbi advised how he had to initially leave Defendants' employ about one month after his hire because he was subjected to prejudicial comments.

33.    Specifically, Edelbi was called a "terrorist" and told by Ottomano, who further stated that he "wants to create a disease to kill all people with pigmented skin color, as they do not belong on earth."

34.    As well, various physical threats were made to Edelbi by Ottomano after he complained about some of the racial remarks made by Ottomano that same day.

35.    Shortly after initially resigning, Rubinstein begged Edelbi to stay, referring to him as the "top employee" in the company.

36.    Rubinstein apologized for Ottomano's racist and despicable comments that he made on a daily basis.

37.    While Edelbi reluctantly agreed to return based on Rubinstein's assurances that matters would improve within Defendants, they did not.

38.    Instead, after returning, Edelbi was subjected to the following comments and actions by Rubinstein:

- "[Ottomano] hired these stupid niggers and they did nothing but spend my money."
- "You're a fucking terrorist."
- Stating that he can lure Black employees to show up to work by putting a big basket of bananas at the front door, while referring to
- "How could he be a good kid if he's black?"
- "These spics are ruining this country. They are invading our country and should all get deported back to where ever they came from."
- "I cant have you using your name when speaking to clients. You must use an alias being that your name is inappropriate for successfully closing deals."

- "What would you do if your son turned out gay? I would kill him/her."
- "If anyone in this office tries to cross me, I am not afraid to use my gun.  I've been to jail before and am not afraid to go back."
- Placing knives and bullets on an open table to intimidate staff.
- Mimicking Indian accents to mock co-workers.
- Pointing to the garbage can when saying "That's your HR Department for all complaints" while laughing.

39.    As well, Edelbi was subject to comments such as those that follow by Ottomano:

- "I want to create a disease to kill all people with pigmented skin color, as they do not belong on this earth"
- "The middle east should be NUKED"
- "Lets suck today's dick and lets do it well."
- "Why do they put fireproofing in the projects?  They should all just burn and die."

40.    Cagno would also join in, engaging in the following conduct:

- Showing a picture of four LGBTQ flags wherein he said, when combined, it creates ultra pride, which is shaped like a swastika.
- Constantly making anti-Semitic comments about Jewish co-workers.
- Wobbling his head when speaking with Indian co-workers to mock them.
- Openly speaking about how he's an active police officer to intimidate employees.
- Would walk into the office in full uniform at least three times per week with his patrol car outside.
- Telling others that he helped Rubinstein obtain a gun and license despite being a convicted felon.
- Coming into work to threaten staff, stating that they would get tased if they did not improve their work ethic.
- Drawing his gun in front of staff to promote his authority over everyone.

41.    All of these comments and actions clearly created a hostile work environment for Edelbi.

42.    Defendants did not have a compliant employee handbook advising employees of their rights under the law, including where they can complain if they feel they are the victims of discrimination or harassment in the workplace.

6

43.    To the contrary, when any issues or complaints were raised, as noted above, Rubinstein would point to the trash can, stating: "that is your HR department."

44.    Despite there being no handbook or proper policy in place, throughout Edelbi's employment, and as recently as the day of his termination, Edelbi complained about the comments to which he was subjected, but nothing was done to rectify his supervisors' (i.e. the Individual Defendants) conduct.

45.    Instead, the Individual Defendants' conduct continually ensued until Edelbi's unlawful termination.

46.    Further supporting Defendants' animus towards Edelbi's national origin and race is the fact that he, along with other minorities with ethnic names at ACS, was provided aliases in attempting to sell ERCs for Defendants.

47.    Edelbi was given the aliases of "James Hart" or "Alex Taylor", the names he was to introduce himself as on behalf of Defendants when trying to sell ERCs to clients or potential clients.

48.    There was no legitimate reason for Edelbi to need to use an alias to perform the duties of his job.

49.    The Individual Defendants believed that having more "American" or "white" names would assist them in selling ERC credits, with no evidence to support their belief.

50.    Notably, Rubinstein and Ottomano felt so invincible in the office that they were bold enough as to openly do drugs daily in the workplace in front of subordinates, such as Edelbi, yet another intimidation tactic.

51.    This included smoking marijuana daily and doing lines of cocaine in front of staff, including Edelbi.

52.     In fact, there were times that Edelbi would have to remove himself from his desk to avoid the secondhand cannabis smoke emanating from Rubinstein's office.

53.     When Edelbi told Rubinstein on multiple occasions that this was unprofessional and illegal behavior, he would simply tell Edelbi to mind his own business and go about his day.

54.     Furthermore, Defendants would also attempt to have their staff forge certain ERC application information for clients so that they could qualify for the ERCs.

55.     Edelbi complained about this fraudulent practice to Rubinstein, only to be told to leave it alone and to do his job.

56.     Shortly after complaining about this and his improper treatment at work, Edelbi was terminated.

**<u>Defendants Fail To Pay Edelbi His Wages Or Commissions</u>**

57.     During his employment, Defendants agreed to pay Edelbi a base salary plus commissions.

58.     For his salary, Edelbi was supposed to receive $2,875.00 per week as his base.

59.     With regard to the commissions structure, as an employee of Defendants, Edelbi earned a commission each time an ERC was placed and funded.

60.     Pursuant to the agreement between Edelbi and Defendants, Edelbi was entitled to $45 per employee, which was earned once a company was funded for an employee for least $10,000 for the ERC (a company usually was granted a $26,000 tax credit for each employee it retained during Covid).

61.     Edelbi estimates that he placed about 16,400 employees while employed by Defendants.

62.     At $45 per employee, this should have yielded commissions to Edelbi in the amount of $738,000.

63.     Although he earned these commissions, Edelbi has received none of them despite Defendants getting paid by their third-party vendor, Bottom Line Concepts, LLC ("BLC").

64.     In fact, of the forty weeks that Edelbi worked for Defendants, he was not paid any compensation whatsoever for twenty-five of those weeks, either in wages or commissions.

**ACS Contracts With ABS**

65.     On October 18, 2022, ABS entered into a Business Partnership Agreement with ACS (the "Agreement")

66.     Pursuant to the Agreement, ACS indicated that it held a "valuable contract" with BLC "under which ACS provides certain screening and referral services from [BLC] in exchange for a share of the revenue generated by such referrals."

67.     Under the Agreement, ABS agreed to "market and solicit new business for [BLC], which shall be processed and run exclusively through ACS, pursuant to the Bottom Line Agreement."

68.     The Agreement stated that "ABS shall be compensated with 70% of the actual revenue realized by ACS from leads identified and submitted by ABS.  Such payments shall be paid to ABS directly by ACS and will be due within ten business days from the date they are received from [BLC]."

69.     During the course of the Agreement, ABS identified and submitted approximately 7,000 leads to ACS, which revenue was realized by ACS as it was paid by BLC.

70.     As a result of the Agreement, ABS should have been paid commissions in the amount of $2,433,200, which commissions have not been paid by ACS to date.

**The Individual Defendants Abuse Corporate Formalities**

71.    During their employment with ACS, the Individual Defendants spent ACS's corporate funds for improper purposes to enhance their livelihoods by purchasing and renting luxury items.

72.    Such funds should have been used to pay Defendnats' employees their wages and commissions, which were withheld so that the Individual Defendants could maintain lavish lifestyles.

73.    During the course of Edelbi's employment with Defendants, he recognized that Rubinstein purchased the following, which are believed to be with ACS funds:

- 2023 Porsche Cayenne Turbo S, estimated value $250,000 (black color)
- 2022 BMW M4, estimated value $100,000 (black color)
- 2023 BMW M8, estimated value $160,000 (blue color)
- 2023 Mini Cooper gift for his girlfriend, estimated value $50,000 (white color)
- Jet skis and high end quad motorcycles

74.    Additionally, Rubinstein also would rent: (a) dozens of vacation homes throughout the year while others were working; (b) party busses to transport individuals to the parties that he hosted regularly; and (c) Lamborghinis for him and Ottomano to use to drive down to Miami, Florida for frequent personal trips.

75.    Ottomano, for his part, purchased the following with ACS's funds:

- 2023 Mclaren 720S, estimated $600,000 (black color)
- 2023 Porsche Cayenne Turbo, estimated value $250,000 (black color)
- 2022 BMW M4, estimated $100,000 value (black color)
- 2023 BMW M8, estimated $165,000 value (matte grey color)
- 2023 Porsche Macan gift for his wife, estimated value $75,000

76.    Further, Ottomano would boast about the $150,000 engine he purchased to upgrade his Porsche 911 Turbo and about the new home he is building in Old Westbury, New York, while he maintains a lavish apartment in Westbury, New York while it is being constructed.

77.    Cagno purchased real estate with his share of ACS's funds.

10

78.     All of the aforementioned funds belonged to ACS and should have been used for legitimate business purposes – such as paying employees – rather than used to bolster the livelihoods of the Individual Defendants.

## COUNT ONE
### (Failure to Pay Minimum Wages – FLSA)

79.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

80.     Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

81.     Defendants were required to pay directly to Edelbi at least the applicable minimum wage rates for all hours worked.

82.     Defendants failed to pay Edelbi the minimum wages to which he is entitled under the FLSA.

83.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

84.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

85.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Edelbi.

86.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

87.     As a result of Defendants' willful violations of the FLSA, Edelbi has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be

determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT TWO
### (Failure to Pay Overtime Wages – FLSA)

88.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

89.    The FLSA requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty during any workweek, unless they are exempt from coverage.

90.    During his employment, Edelbi regularly worked overtime, without receiving any premium pay for hours worked in excess of forty per workweek.

91.    At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Edelbi the required overtime wages to which he is entitled.

92.    As a result of Defendants' willful violations of the FLSA, Edelbi has suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT THREE
### (Failure to Pay Minimum Wages – NYLL)

93.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

94.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

95.    At all times relevant, Edelbi has been an employee of Defendants, and Defendants have been employers of Edelbi, within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

96.    Defendants have failed to pay Edelbi the minimum hourly wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

97.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Edelbi the full minimum wage at a rate in New York State to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

98.    Through their knowing or intentional failure to pay minimum hourly wages to Edelbi, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

99.    Due to Defendants' willful violations of the NYLL, Edelbi is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FOUR
### (Failure to Pay Overtime Wages – NYLL)

100.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

101.    The NYLL requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty during any workweek, unless they are exempt from coverage.

102.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

103.    At all times relevant, Edelbi has been an employee of Defendants, and Defendants have been employers of Edelbi, within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

104.    Defendants have failed to pay Edelbi the overtime wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations.

105.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Edelbi the unpaid overtime wages to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

106.    Through their knowing or intentional failure to pay overtime wages to Edelbi, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

107.    Due to Defendants' willful violations of the NYLL, Edelbi is entitled to recover from Defendants his unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FIVE
### (Violation of NYLL §193)

108.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

109.    At all relevant times, Defendants were Edelbi's employers.

110.    Defendants failed to pay Edelbi wages for his services during his employment with them, in violation of NYLL §193.

111.    As a result of Defendants' unlawful conduct, Mr. Schweitzer is entitled to an award of damages in an amount to be determined at trial.

14

**COUNT SIX**
**(Violation of NYLL §195 Notice Requirement)**

112.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

113.    Defendants failed to provide Edelbi with written notice of his wages and other required information in violation of NYLL §195.

114.    Defendants' violation of NYLL §195 as described herein was willful.

115.    As a result of Defendants' unlawful conduct, Edelbi is entitled to an award of damages pursuant to NYLL § 198 in an amount to be determined at trial.

**COUNT SEVEN**
**(Violation of NYLL §195 Recordkeeping Requirement)**

116.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

117.    During his employment, Defendants did not provide Edelbi with a weekly statement reflecting his hours worked or his rate of pay.

118.    Upon information and belief, Defendants failed to maintain true and accurate records of the number of hours Edelbi worked during his employment with them.

119.    As a result of Defendants' unlawful conduct, Edelbi is entitled to an award of damages pursuant to NYLL §198 in an amount to be determined at trial.

**COUNT EIGHT**
**(Unlawful Retaliation under the FLSA)**

120.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

121.    Edelbi made good-faith complaints to Defendants that they failed to pay him any wages or commissions during his employment.

122.    Edelbi's complaints constitute protected activity under the FLSA.

123.    Defendants retaliated against Edelbi by continuing to require him to work without pay, never making him whole, and ultimately terminating his employment.

124.    Defendants' retaliatory conduct violates 29 U.S.C. § 215(a)(3).

125.    Edelbi is entitled to compensatory damages and other appropriate relief, including without limitation, back pay, front pay, lost benefits, and costs and attorneys' fees in an amount to be determined at trial.

## COUNT NINE
### (Unlawful Retaliation under NYLL §215)

126.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

127.    Edelbi made good-faith complaints to Defendants that they failed to pay him any wages or commissions owed.

128.    Edelbi's complaints constitute protected activity under the NYLL.

129.    Defendants retaliated against Edelbi by continuing to require him to work without pay, never making him whole, and ultimately terminating his employment.

130.    Defendants' retaliatory conduct violates NYLL §215.

131.    Edelbi is entitled to compensatory damages and other appropriate relief, including without limitation, back pay, front pay, lost benefits, and costs and attorneys' fees in an amount to be determined at trial.

## COUNT TEN
### (Unlawful Retaliation under NYLL §740)

132.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

133.    Edelbi reasonably believed that forging ERC applications and the Individual Defendants' use of illegal drugs in the workplace constituted violations of rules, regulations or laws, which he complained to Defendants about.

134.    Edelbi refused to remain silent regarding Defendants' aforementioned conduct and told them that their actuals were illegal.

135.    Edelbi's refusal to participate and insistence that the aforementioned conduct be disclosed constitutes protected activity under NYLL §740.

136.    Defendants retaliated against Edelbi by terminating his employment.

137.    Defendants' retaliatory conduct violates NYLL §740.

138.    Defendants' retaliatory conduct was willful, malicious, or wanton under NYLL §740.

139.    Edelbi is entitled to appropriate relief, including without limitation, front pay, compensation for lost wages and benefits, costs and attorneys' fees, a civil penalty, and punitive damages in an amount to be determined at trial.

## COUNT ELEVEN
### (Discrimination Based on Race and National Origin in Violation of Title VII)

140.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

141.    Defendants violated Title VII when it terminated Edelbi's employment because of his race and national origin.

142.    Defendants acted intentionally and with malice and/or reckless indifference to Edelbi's statutorily protected rights.

143.     As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TWELVE
### (Discrimination Based on Race and National Origin in Violation of NYSHRL)

144.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

145.     Defendants violated the NYSHRL when it terminated Edelbi's employment because of her age.

146.     Defendants acted intentionally and with malice and/or reckless indifference to Edelbi's statutorily protected rights.

147.     As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THIRTEEN
### (Hostile Work Environment in Violation of Title VII)

148.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

149.     As set forth herein, Defendants fostered a working environment that was permeated with discriminatory intimidation, ridicule and insult against Edelbi.

150.     Edelbi was subjected to such conduct, which was severe or pervasive, and altered the conditions of his work environment.

151.     The hostile conduct was engaged in by Defendants' supervisors and managers who had authority over Edelbi, thereby making Defendants liable for the wrongful conduct.

152.    As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT FOURTEEN**
**(Hostile Work Environment in Violation of NYSHRL)**

153.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

154.    As set forth herein, Defendants fostered a working environment that was permeated with discriminatory intimidation, ridicule and insult against Edelbi.

155.    Edelbi was subjected to such conduct, which was severe or pervasive, and altered the conditions of his work environment.

156.    The hostile conduct was engaged in by Defendants' supervisors and managers who had authority over Edelbi, thereby making Defendants liable for the wrongful conduct.

157.    As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT FIFTEEN**
**(Retaliation in Violation of the Title VII)**

158.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

159.    Edelbi participated in protected activities under Title VII by, among other things, complaining of continued harassment in the workplace.

160.    After lodging his complaints to Defendants, Edelbi was terminated.

161.    Defendants acted intentionally and with malice and/or reckless indifference to Edelbi's statutorily protected rights.

162.    As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SIXTEEN
### (Retaliation in Violation of the NYSHRL)

163.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

164.    Edelbi participated in protected activities under the NYSHRL by, among other things, complaining of continued harassment in the workplace.

165.    After lodging his complaints to Defendants, Edelbi was terminated.

166.    Defendants acted intentionally and with malice and/or reckless indifference to Edelbi's statutorily protected rights.

167.    As a result of Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SEVENTEEN
### (Aiding and Abetting Discrimination in Violation of the NYSHRL)

168.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

169.    As a result of the aforementioned actions, the Individual Defendants discriminated against Edelbi on account of his race and national origin, and retaliated against him for same, with respect to the terms, conditions and privileges of his employment in violation of the NYSHRL.

170.    The Individual Defendants violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

171.    The Individual Defendants acted intentionally and with malice and/or reckless indifference to Edelbi's statutorily protected rights.

172.    As a result of Individual Defendants' unlawful acts, Edelbi has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

### COUNT EIGHTEEN
**(Breach of Contract)**

173.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

174.    Defendants agreed to pay Edelbi $45 per employee who was funded with an ERC.

175.    Defendants breached this agreement by failing to pay Edelbi for the commissions he earned.

176.    Edelbi has been damaged by Defendants breach in an amount to be determined at trial.

### COUNT NINETEEN
**(Violation of NYLL §191)**

177.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

178.    Defendants agreed to pay Edelbi $45 per employee who was funded with an ERC.

179.    Defendants breached this agreement by failing to pay Edelbi for the commissions he earned, in violation of NYLL §191.

180.    Edelbi has been damaged by Defendants breach in an amount to be determined at trial.

## COUNT TWENTY
### (Breach of Contract)

181.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

182.    ABS entered into the Agreement with ACS.

183.    Defendants breached the Agreement by failing to pay ABS for the revenue and commissions it earned thereunder.

184.    The Individual Defendants should be held liable for Defendants conduct based on piercing the corporate veil and/or because they were an alter ego of ACS.

185.    ABS has been damaged by Defendants breach in an amount to be determined at trial.

## COUNT TWENTY-ONE
### (Quantum Meruit)

186.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

187.    Plaintiffs performed services for Defendants pursuant to which they were to receive commissions based on employees placed who were funded through ERCs.

188.    At all relevant times, Defendants knew that these services were being performed by Plaintiffs and that Plaintiffs expected to be paid for their services.

189.    Defendants accepted the benefit of Plaintiffs' services without paying for them.

190.    Plaintiffs have demanded payment from Defendants for their services on multiple occasions.

191.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be determined at trial, with interest.

## COUNT TWENTY-TWO
### (Unjust Enrichment)

192.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

193.    Plaintiffs performed services for Defendants pursuant to which they were to receive commissions based on employees placed who were funded through ERCs.

194.    Plaintiffs performed services for Defendants pursuant to which they were to receive commissions based on employees placed who were funded through ERCs.

195.    Defendants were enriched by the services Plaintiffs provided without payment at their own expense.

196.    It is against equity and good conscience for Defendants to be enriched by Plaintiffs' services and to retain the payment that Plaintiffs are owed for their services.

197.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be determined at trial, with interest.

## BCL §630 / LLCL §609 NOTICE AND DEMAND

Pursuant to New York Business Corporation Law ("BCL") §630 and/or New York Limited Liability Company Law ("LLCL") §609, Plaintiff hereby advises that it intends to hold Defendants' top ten shareholders and/or members liable for the unpaid wages referenced herein. Further, Plaintiff demands that Defendants permit an examination of its record of shareholders under BCL §624 so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully that this Court enter judgment against Defendants:

A.      Declaring that the practices complained of herein are unlawful under the FLSA and the NYLL;

B.      Awarding Plaintiffs damages for unpaid wages, including overtime, under the FLSA;

C.      Awarding Plaintiffs liquidated damages in an amount equal to 100% of their damages for unpaid wages, including overtime;

D.      Awarding Plaintiffs damages for unpaid wages, including overtime, under the NYLL;

E.      Awarding Plaintiffs liquidated damages in an amount equal to 100% of his damages for unpaid wages, including overtime, under NYLL § 663;

F.      Awarding Plaintiffs front pay, back pay, and lost benefits;

G.      Awarding Plaintiffs compensatory damages for the discrimination, hostile work environment and retaliation claims under Title VII and the NYSHRL.

H.      Awarding Plaintiffs compensatory damages for Defendants' breach of contracts;

I.      Awarding Plaintiffs compensatory damages for his quantum meruit and unjust enrichment claims;

J.      Awarding Plaintiffs emotional distress damages;

K.      Awarding Plaintiffs punitive damages and pre-judgment and post-judgment interest as applicable;

L.      Awarding Plaintiffs the expenses incurred in this action, including costs and attorneys' fees; and

M.      Awarding all such other and further relief as this Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: May 24, 2024
Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**

By: _____
        Yale Pollack, Esq.
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340
ypollack@yalepollacklaw.com
*Attorneys for Plaintiffs*

25